IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff | ) |
| v. | ) CASE NO. 1:24-cr-22 |
| NINA MAZROUEI, | ) |
| Defendant. | ) |

### SENTENCING MEMORANDUM OF NINA MAZROUEI

Nina Mazrouei respectfully submits this Sentencing Memorandum to assist the Court in fashioning an appropriate sentence at the upcoming sentencing hearing. For the following reasons, a sentence of probation, including twenty-four months of home confinement is appropriate given Nina's background, utter lack of any criminal history, post-sentencing rehabilitation, and to ensure she remains employed so she can begin to make financial restitution.

I.     **LEGAL STANDARD**

Section 3553(a) provides that the district court must impose a sentence that is "sufficient, but not greater than necessary" to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D). In addition, the court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the guideline sentencing range; (4) any pertinent policy statements; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution to any victims. *Id*. § 3553(a)(1), (3)-(7). Although the district court is required to consider all of the § 3553(a) factors, it "is permitted to attach great weight to one factor over others." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).

## II. SENTENCING FACTORS

### A. History and Characteristics of the Defendant.

Nina is a 30-year old lifelong citizen of Georgia who was born and raised in Cobb County. Her family was loving and supportive growing up and remains so. Both of her parents immigrated from Iran to America in the 1980s to attend college (where they met) and seek a better life. Her paternal grandparents continue to reside in Iran, while her maternal grandparents (with whom she is especially close) also came to America and live in Georgia.

But the combination of Nina's Iranian heritage and our country's cultural environment in the wake of September 11th made her childhood challenging and painful in many respects. As she put it in a letter she wrote to the Court, she stood

out. She looked different and had a different last name. And "standing out often made [her] a target." She was bullied, isolated, and ostracized throughout much of her childhood, in part due to her Middle Eastern background. As a result, she was frequently alone and isolated as a child.



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████ But many others rallied around her. This love and care from people close to her has changed her. Nina found employment, became closer with her family, and now volunteers regularly. She also – for the first time in a long time – has hopes and plans: she intends to finish her degree, ████████████████████████████ ████████████████████████████████████ and eventually work for a non-profit. She also hopes to work with individuals who have encountered the justice system.

And over the last year, she has put her plans into action. Since March of 2024 she has dedicated significant time to volunteering with Best Buddies, a non-profit that provides opportunities for friendship for individuals with intellectual or developmental disabilities or delays. Through Best Buddies she was paired with and has befriended and regularly spends time with a 25-year old woman with intellectual disabilities.

She also volunteers with Circle Cobb (and has been for roughly a year). Every Tuesday she serves food to families living at or below the Federal poverty line at Living Stone Church in Marietta. In program for Circle Cobb, she is currently training to serve as a Circle Cobb "ally," where she will be paired with a family to help them with resume building, developing interview skills, and so on.

She also attends North Metro Church, where she volunteers with production and stage managing. North Metro wants her to help with production for services at a second campus, which could lead to employment in the future. She also participated in the "Re:generation" program at her church, ▇▇▇▇▇▇ which seeks to help individuals understand why they've acted in ways that have harmed other people.

The people in Nina's life have noticed the changes she's made. ▇▇▇▇▇▇ a small group leader who helped shepherd Nina through the Re:generation program at North Metro Church, said that "From the beginning she was humble, open, and willing to listen." ▇▇▇ Letter, Ex. 1 at 8. ▇▇▇ wrote that Nina has a "beautiful soul" and "exhibited "strong leadership attributes," the "willingness and courage" to face her legal consequences squarely, and that "Nina would be of greater service to the community if she were given the freedom to continue working and volunteering for the activities at church in which she is involved." *Id*. at 8. Both ▇▇▇▇▇ and the women's pastor at North Metro have

5

"have recommended her as a Re:generation leader for the next cohort of participants" because "[s]he has a strong faith, a meaningful and impactful story that can help others navigate through difficult times." *Id*. at 8.

█████████ another group leader at Nina's faith-based recovery group, echoes █████████ words. Importantly, she notes that Nina "never once minimized her mistakes and was quick to take full responsibility for her actions." ████ Letter, Ex. 1 at 1. Three of Nina's group members at Re:generation, said much the same thing. ███████ writes that, "Nina has always been open and honest with the group, sharing her story on days when it was hard. She has always acknowledged her crime, never made excuses, and owned up to what she did." ████ Letter, Ex. 1 at 6. And ████████, another Re:generation group member, writes that "Nina is a kind person that has so much to offer this world" who "has taken the steps to change her life." ████ Letter, Ex. 1 at 7. Finally, ██████ writes that "To know Nina is to know true friendship – true acceptance, support, kindness, generosity, sacrifice, and love. She never hesitated to offer to step in when I needed help as I walked through my own healing journey." ████ Letter, Ex. 1 at 9.

█████████, █████████ of Circle Cobb, writes that Nina is "dedicated," "consistent", and "dependable," and that her "reliability has been critical to our success." ████ Letter, Ex. 1 at 2. She notes that Nina consistently

6

"goes above and beyond" when volunteering, arriving early and staying late. *Id.* According to ▮▮▮▮, Nina "embodies the qualities of integrity, empathy, and resilience," and has shown a strong ability to connect with others in her new role as a mentor. *Id.* She also writes that Nina shared her wrongdoing with her, but that "it is fitting that Nina has chosen to serve families who are seeking to transform their lives and break the cycle of generational poverty" because her faith teaches her "transformative change is possible."

> Nina understands she needs community and accountability in her life. I believe Nina has taken full responsibility for her actions. I believe she is an individual that is remorseful and repentant of her deeds towards others. Nina has demonstrated her care for others who are less fortunate in life. In other words, she can get outside of herself and see the needs of those around her.
>
> I believe through this experience Nina has come to a place of peace with herself and not filled anxiety of how her life may be affected, this is very uncommon with people in her situation. Nina also seems to have found a greater purpose in her life and that is service to others. Bringing what joy she can to those who would benefit from her kindness and care.
>
> ▮▮▮▮ It has been a privilege and an honor to get to know Nina and work with her. Nina will be a great contributor of good to those who get to know her.

7

███████, Ex. 1 at 3-5.

These letters paint a portrait of someone who has undergone a profound transformation and who is doing genuine good in the world, militating in favor of a downward departure.

The words of Nina in a letter to the Court describes her journey the best:

In 2023, I began purchasing luxury items with my company's credit card, trying to convince myself this would be the key to happiness. I thought that having nice things would show people that my life was good, that I was worthy of attention and love. Every time I made a purchase, I felt a rush of dopamine that made me feel "good," and I believed, in those moments, that this was what life was all about. Many, many of these items I never opened or used. It was simply the dopamine high of buying them that I craved.



…

I've also made the decision that the person I was over the last decade—the misguided version of myself—is not who I want to be anymore. I began to see the self-centered nature of social media and how it made me feel unworthy, unsuccessful and not able to measure up. Fortunately, I have limited my use on my social media accounts and have become very careful in the content that I allow myself to see.

> …
>
> As awful as my actions were, and while I am beyond remorseful for the hurt I've caused those around me, I am truly thankful that I got caught. Getting caught led me to rediscover my faith, become healthier, and, for the first time in a long time I feel normal and I actually have the will to live.
>
> …
>
> I know that I am not deserving of any grace. My actions were heinous and have caused pain that I deeply regret. I fully understand that what I did warrants punishment, and I am ready to accept responsibility for the harm I've caused. But I am here, humbly asking for mercy—not because I want to avoid the consequences, but because I have changed.[2]

Ex 2.

### B. Nature and Circumstances of the Offense.

The Court must also consider the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1). Nina's offense was serious, but it was also non-violent. Her wrongdoing occurred ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And while the conduct she engaged in took place over several months, it is not part of any larger pattern of criminality.

She has no prior or subsequent criminal offenses, and no pattern of engaging

---

[2] At the plea change hearing, the Court told Nina he wanted to know everything about her. She has submitted a letter to the Court from which these quotations were taken. Ex. 2. She also gave testimony at her church to a group which was going through a crisis in their lives explaining how she has been navigating the crisis in her own life. Ex. 3.

in fraud or fraud-like behavior. PSR ¶¶ 37-44. As a result, she has a criminal history category of I which entitles her to a two-level offense level reduction as a Zero Point Offender. 18 U.S.S.G § 4C1.1(a); see also PSR ¶ 34.

She also promptly admitted her wrongdoing to her employer once caught, and promptly accepted responsibility as the Government acknowledges.

There is also no evidence that Nina attempted to cover her tracks, obstructed her employer from learning about the fraud, or lied to her employer when confronted with evidence of her fraud. *Compare with United States v. Tomko,* 562 F.3d 558, 576 (3d Cir. 2009) (affirming non-custodial sentence for tax fraud, over dissent's objection that the offense concerned an "intricate scheme spanning several years and involved the coercion and coordination of numerous other individuals") (Fisher, J., dissenting).

As part of her plea agreement, Nina has agreed that she abused a position of trust and is thus subject to a § 3B1.3 enhancement. However, Nina's position at her former employer is not the kind of one to which this enhancement typically applies. *See* U.S.S.G. § 3B1.3, comment n.1 ("This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because

such positions are not characterized by the above-described factors."). As a result, while her stipulation ensures that she should receive this level enhancement when the Court calculates her guideline sentence, it should not be considered as a significant exacerbating factor in any final sentence.

Finally, Nina acknowledges that neither the insurance coverage reimbursing her former employer in the amount of $500,000.00 nor her post-arrest actions in turning over the merchandise she purchased and still had in her possession (much of it unopened and never used, and estimated as being worth up to $300,000) does not affect the "loss" calculations under the Guidelines. She further understands she will owe restitution to the insurance company that provided coverage for her former employer. However, these two events together may mean that her former employer's actual loss will be at most roughly 65 percent of the loss identified in the PSR, and perhaps even less. To be clear, however, Nina does not oppose the Court ordering restitution of the full loss amount described in the PSR.

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence, Protect the Public, and Ensure Nina [REDACTED]

Next, a sentence of probation with a significant home confinement term also affords adequate deterrence, adequately protects the public, and ensures that Nina can continue to receive [REDACTED] in the most effective manner. 18 U.S.C. § 3553(a)(2).

Nina has no prior or subsequent criminal history and no pattern of non-criminal wrongdoing other than for the crimes she is charged with. The facts surrounding her actions plainly show that her conduct ███████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ █████

There is also no indication that she poses any further threat to the public. She will carry a felony conviction with her for the rest of her life. And as numerous individuals have attested. Nina has made incredible positive changes in her life. *See supra* at pp. 4-9. She also has a loving and supportive family, strong ties to her community, and a powerful faith – all of which eliminate any risk of recidivism.

**D. The Need to Avoid Unwarranted Sentence Disparities.**

As the PSR observes, the average length of imprisonment for individuals whose primary guideline was § 2B1.1 was 19 months and the median length was 18 months. PSR at p. 22. Roughly 59% of the sentences imposed under that section involved a downward departure or variance, while roughly 24% were within the guideline range, and 16% received a 5K1.1 substantial assistance departure.

But a sentence of home confinement would not be remarkable under the facts present here. *See, e.g.*, *United States v. Diambrosio*, 2008 U.S. Dist. LEXIS 20963 at *18 (E.D. Pa. Mar. 13, 2008) (sentence of 1 year home confinement and five years of probation was a reasonable sentence for defendant who defrauded his company of over $2.8 million dollars, given his lack of criminal history, devotion to family, and large restitution obligation); *United States v. Tighe*, 2018 U.S. Dist. Lexis 41088, at *1-3 (E.D. N.Y. March 13, 2018) (order on restitution) (noting that the Court sentenced two defendants who pleaded guilty to wire fraud to four years of probation, including six months of home confinement, in connection with a fraudulent scheme to induce drug purchases of non-sterile, adulterated, and/or misbranded drugs for healthcare purposes; total restitution ordered in the amount of $825,363.15); *United States v. Ferguson*, 942 F. Supp. 2d 1186, 1187 (M.D. Ala. 2013) (court imposed a sentence of 8 months of home confinement instead of guideline range of 10 to 16 months of imprisonment for wire fraud when defendant had significant history of mental illness, was intellectually impaired, but where she recruited up to a dozen other individuals to participate in credit fraud scheme).

And defendants with much more serious criminal histories or who engaged in far more serious frauds have been sentenced at or below the guideline range. *See United States v. Gurfinkel*, 2023 U.S. Dist. Lexis 96893 *1, 9 (S.D. Cal. 2023) (defendant was sentenced to 10 months' imprisonment for wire fraud despite six (6)

13

prior criminal convictions, including grand theft by an employee; government had recommended sentence of 27 months given guideline range of 27-33 months) (order denying motion for compassionate Covid-19 release); *Illanes v. United States*, 2017 U.S. Dist. LEXIS 142044, *13 (S.D. Fla. Aug. 31, 2017) (participant in cross-border health care fraud scheme resulting in $ 2.4 million loss sentenced to 18 months of imprisonment despite offense level of 24) (order denying *pro se* motion to vacate sentence).

### E. The Need to Provide Restitution.

A sentence of probation with a significant home confinement term also ensures that Nina can provide as much restitution as possible. 18 U.S.C. § 3553(a)(7). She is currently employed. And although she makes a modest salary, it is only through her continued employment that she can hope to begin paying the debt she owes. Her options to provide such restitution would be exceedingly limited during any period of incarceration, and only delay and limit such restitution. Moreover, the Court can consider this reality when handing down its sentence. *United States v. Martinez*, 2006 U.S. Dist. LEXIS 113339, *15 (D.N.M. Feb. 24, 2006) (identifying need to pay restitution to victim of car crash caused by defendant as one of reasons justifying granting a downward departure from a Zone D offense, calculated as an offense level of 20 by the PSR, to a term of one month of imprisonment and twenty months of home confinement, served over a five-year

probation period); *United States v. Montgomery*, 165 Fed. Appx. 840, 843, 2006 U.S. App. LEXIS 2891, *6-7 (11th Cir. 2006) (affirming below-guideline sentence of 8 months imprisonment for bank fraud because district court appropriately considered need to make restitution as part of the reasons for its downward variance).

### F. The Kinds of Sentences Available.

A sentence of home confinement is plainly available if the Court grants a downward variance. Although Nina's offense level places her in Zone D of the sentencing table, a downward variance that places her in Zone B would permit the Court to issue a sentence that includes only home confinement. Even if the Court did not do so, it is arguably permitted to issue a sentence of probation inclusive of a term of home confinement. That's because home detention may be imposed as a condition of probation as a "substitute for imprisonment. U.S.S.G. § 5F1.2; *see also United States v. Lopez-Pastrana*, 899 F.3d 13, 18-19 (1st. Cir. 2018) (noting that home confinement is treated "as a form of custody") (citations omitted); *United States v. Walker*, 918 F.3d 1134, 1150 (10th Cir. 2019) ("home confinement itself functions as an alternative to a period of incarceration in prison"); *United States v. Alvear*, 93 Fed. App'x 319, 320 (2d Cir. 2004) (holding that a required term of imprisonment was satisfied by defendant receiving home detention); see also *United States v. Taylor*, 550 Fed. App'x 819, 821 (11th Cir. 2013) (adopting the holding of *United States v. Ferguson*, 369 F.3d 847, 852 (5th Cir. 2004), which held that a

district court erred when it imposed a term of incarceration as well as a term of home detention that combined to exceed the statutory maximum).

### G. Acceptance of Responsibility and Timely Notification of Guilty Plea.

Nina immediately accepted responsibility after her former employer discovered her actions. She also accurately informed them of the scope of the charges she made. PSR at ¶¶ 12-14. She has also accepted responsibility for her wrongdoing, as the Government recognizes. Moreover, the Government agrees that Nina timely notified it of her intent to plead guilty. She also waived indictment by the Grand Jury and pled on an Information.  Together, these two facts establish that Nina is entitled to a 3-level deduction for her offense level (2 for accepting responsibility and 1 for timely notification).

One other comment is appropriate concerning the downward deviation for early acceptance. Section 5K3.1 allows the establishment of Early Disposition Programs. When so established, a defendant who takes early responsibility for their conduct and saves the Government unnecessary trouble and expense may be awarded a 4 level downward departure. Here, Nina would have been a perfect candidate for the program. However, the United States Attorney for this District has admittedly not implemented such program. Nina should not be penalized for what would be a further downward departure just because the U.S. Attorney's Office has not implemented the program. The Court may and should consider this fact in its

sentencing decision.

## III. CONCLUSION

For the foregoing reasons a sentence of five years of probation with a home confinement term of 24 months is an appropriate and reasonable sentence under the circumstances.

Respectfully submitted this 3rd day of January, 2025.

/s/Roy E. Barnes
Roy E. Barnes
Georgia Bar No. 039000
*Counsel for Defendant*

**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Telephone: 770.419.8505
Facsimile: 770.227.6373
Mobile: 404.226.1129
Email: roy@barneslawgroup.com

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record:

AUSA Kelly Connors
U.S. Attorney's Office
75 Ted Turner Drive S.W., Suite 600
Atlanta, Georgia 30303
kelly.connors@usdoj.gov

Respectfully submitted this 3rd day of January, 2025.

/s/Roy E. Barnes
Roy E. Barnes
Georgia Bar No. 039000
*Counsel for Defendant*

**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Telephone: 770.419.8505
Facsimile: 770.227.6373
Mobile: 404.226.1129
Email: roy@barneslawgroup.com